# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLEEN M. COURTNEY,<br><br>               Plaintiff,<br><br>   v.<br><br><br>HOUSING AUTHORITY OF THE COUNTY OF KINGS, et. al.,<br><br>               Defendants. | Case No. 1:20-cv-01296-NONE-SKO<br><br>**FIRST SCREENING ORDER**<br><br>(Doc. 1)<br><br>**21-DAY DEADLINE** |

## I.       INTRODUCTION

### A.      Background

On September 11, 2020, Plaintiff Colleen M. Courtney ("Plaintiff"), proceeding pro se, filed a complaint against the Housing Authority of Kings County ("HAKC," erroneously named as "Housing Authority of the County of Kings"), the Kings County Board of Supervisors (the "Board," erroneously named as "Board of Supervisors of the County of Kings"), and the California Department of Fair Employment and Housing ("DFEH"). (Doc. 1 ("Compl.").)  Plaintiff also filed an application to proceed *in forma pauperis*, which was granted on September 15, 2020.  (Docs. 2 & 3.)  Plaintiff's complaint is now before the Court for screening.

As discussed below, Plaintiff appears to allege unlawful housing discrimination based on disability under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, and the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, but her complaint fails to state any cognizable claims. Plaintiff is granted leave to file a first amended complaint and is provided the pleading requirements and legal standards under which her claims will be analyzed.

## B.   Screening Requirement and Standard

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case and shall dismiss the case at any time if the Court determines the allegation of poverty is untrue, or the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  If the Court determines that a complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

The Court's screening of a complaint under 28 U.S.C. § 1915(e)(2) is governed by the following standards.  A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Plaintiff must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. *See, e.g., Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## C.   Summary of the Complaint

### 1.   Allegations Against HAKC

On approximately January 1, 2018, Plaintiff, a participant in the Section 8 Housing Choice Voucher ("HCV") program, was making arrangements to "port out" of Santa Clara County and into Kings County.[1]  (Compl. at 9.)[2]  Plaintiff claims that her family was "hard to place" because she and her son are disabled, and they have two service dogs.  (*Id.*)  Plaintiff wanted to move to her sister's

---

[1] The portability process allows an eligible Section 8 voucher-holder to move into a rental unit outside of the jurisdiction of the public housing authority ("PHA") that initially issued the voucher, so long as there is a PHA administering the HCV program in the new jurisdiction where the unit is located.  24 C.F.R. §§ 982.4, 982.355.

[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

1  house, so that her sister could be her caretaker and trustee.  (*Id.*)

2      Plaintiff worked with two HAKC employees during the portability process.  (Compl. at 9.)

3  According to Plaintiff, one employee had "quoted" Plaintiff a voucher extension of 120 days, but

4  after Plaintiff's voucher expired on March 28, 2018, HAKC refused to give her an extension.  (*Id.*)

5  Based on the denial of the extension, Plaintiff alleges that HAKC violated 24 C.F.R. §

6  982.355(c)(14).[3]  (*Id.* at 10.)   Plaintiff further alleges that, because she is disabled, HAKC

7  improperly denied her sister "as Caretaker" on the grounds that her sister was the owner of the

8  property that Plaintiff wanted to move into, in violation of 24 C.F.R. § 982.306(d).[4]  (*Id.*)

9      Plaintiff further alleges that because she was "gifted" half of her sister's property at some

10  point, HAKC was required to "open a special case of the Homeowner's program or issue a

11  homeowner's voucher and follow HUD Regulations that accompany each program.  If not[,] this is

12  another violation of [HAKC] performing another act of Discrimination against the Disabled

13  Families, to obtain housing."  (Compl. at 10.)

14                  **2.  Allegations against the Board**

15      In Plaintiff's summary of allegations against the Board, she quotes and emphasizes language

16  from the "Board of Supervisors" webpage on the County of Kings website[5]:

17
18      A county supervisor may serve in other capacities on various board[s], commissions, or special districts.  State statue [sic] authorizes, and in some cases mandates, that various services or functions be carried out by entities other than the Board of

19      Supervisors.   Some of these entities include: 6 other entities and HOUSING AUTHORIY [sic] OF KINGS COUNTY.

20
21      The role and functions of these entities primarily relate to planning for future development and the associated services needs (e.g., water, sewer) and impacts (e.g.,

22      air quality, HOUSING, etc.), Board members serving on one or more of these entities may find themselves making decisions on a variety of issue[s] from regional planning to " ESTABLISHING SPHERES OF "INFLUENCE" for new cities or special

23      districts within the county."

24  (*Id.*)  Plaintiff alleges that, "[w]ith the above stated, the Board . . . ha[s] also violated the same Code

---

25  [3] 24 C.F.R. § 982.355(c)(14) provides: "Once the receiving PHA issues the portable family a voucher, the receiving

26  PHA's policies on extensions of the voucher term apply.   The receiving PHA must notify the initial PHA of any extensions granted to the term of the voucher."

    [4] 24 C.F.R. § 982.306(d) provides: "The PHA must not approve a unit if the owner is the parent, child, grandparent,

27  grandchild, sister, or brother of any member of the family, unless the PHA determines that approving the unit would provide reasonable accommodation for a family member who is a person with disabilities."

28  [5] *See Board of Supervisors*, County of Kings, www.countyofkings.com/departments/board-of-supervisors (last visited Nov. 23, 2020).

of Federal Regulations as [HAKC] since this Board governs the Commissioner chairs" and "[i]s accountable for the same consequences and restitution to the victims of Housing Discrimination." (*Id.*)

### 3. Allegations against DFEH

In her complaint, Plaintiff identifies five individuals at DFEH with whom she interacted: Karina Arabolaza, Gloria Morales, Sharon Godbolt, Susan Davenport, and "Mr. Reys." (Compl. at 12.)[6]

Arabolaza, a Consultant II at DFEH, drafted Plaintiff's complaint filed with DFEH. (Compl. at 12.) According to Plaintiff, Arabolaza requested Plaintiff's "mental records to form the DFEH nexus to [her] Fair Housing Accommodation request." (*Id.*) Plaintiff subsequently consulted with a disability rights lawyer, who advised her not to turn over her records because they were protected under doctor-patient confidentiality. (*Id.*) Plaintiff instead sent her Social Security Administration ("SSA") award letter to DFEH. (*Id.*) Plaintiff alleges it was a violation of 24 C.F.R. § 100.202(c) for Arabolaza to request Plaintiff's medical records to verify whether Plaintiff has a disability.[7] (*Id.*) Plaintiff contends that the SSA letter was sufficient to prove that she is disabled. (*Id.*)

Plaintiff alleges that the first time she contacted Morales, a DFEH Supervisor, Morales tried "to stop past consultants from Mo [sic] interactive Process = NO FURTHER RESPONSES." (Compl. at 13.) During their second interaction, Morales "assigned another consultant that would contact by themselves." (*Id.*) Plaintiff did not hear from Morales again. (*Id.*)

Plaintiff communicated with Godbolt, a DFEH Mediation Attorney, twice in October 2018. (Compl. at 13.) Plaintiff had a telephonic mediation conference scheduled for 10:00 a.m. on November 16, 2018, but the call "never came through." (*Id.*) According to Plaintiff, Godbolt's explanation for the missed conference call was that she forgot to schedule it on her calendar. (*Id.*) Plaintiff had no further communication with Godbolt. (*Id.*)

---

[6] Plaintiff's complaint indicates that she interacted with these individuals on various dates throughout "1918" and "1919." (Compl. at 12–14.) The Court assumes these were typographical errors and the alleged events occurred in 2018 and 2019.

[7] 24 C.F.R. § 100.202(c) provides in part: "It shall be unlawful to make an inquiry to determine whether an applicant for a dwelling, a person intending to reside in that dwelling after it is so sold, rented or made available, or any person associated with that person, has a handicap or to make inquiry as to the nature or severity of a handicap of such a person."

At the beginning of 2019, Plaintiff spoke with Davenport, a Consultant III at DFEH. (Compl. at 13.) Davenport contacted Plaintiff to let Plaintiff know that she had been assigned to Plaintiff's case. (*Id.*) Plaintiff alleges that Davenport requested her medical records, and Plaintiff responded that she had already submitted her SSA award letter to DFEH. (*Id.*) According to Plaintiff, Davenport informed her that HAKC: (1) had no housing available; (2) had no money available for her housing; and (3) wanted to "negotiate the CFR violation that they broke" and would provide her with the 120–190 day extension "that they refused before." (*Id.*) Plaintiff responded that she "d[id] not make deals with criminal activity involved" and declined the offer. (*Id.*)

During the last communication Plaintiff had with DFEH, she was informed that the agency's investigation did not find any housing discrimination by HAKC. (Compl. at 14.) Plaintiff was provided with instructions for filing an appeal, which she subsequently did. (*Id.*)

In February and March 2019, Plaintiff emailed Reys, who worked for the DFEH Appeals Unit, asking for an update on her appeal. (Compl. at 14.) Reys never responded, and Plaintiff is "still waiting for his finding and recommendations." (*Id.*)

### 4. Relief requested

Based on these allegations, Plaintiff claims that she was subject to housing discrimination because she is disabled. (Compl. at 6.) Plaintiff alleges that she and her sister, who is her caregiver, suffered severe financial problems and "great [m]ental and compounded aggrravation [sic] to [their] Physical disabilities" due to Defendants' "FRAUDULENT HATEFULL[] DISCRIMATIONAL BEHAVIOR'S [sic] CAUSED BY THEIR []UNLAWFULL [sic] SPHERE OF 'INFLUENCE' FOR SELF GAIN." (*Id.*) Plaintiff identifies the FHA, various federal code provisions, and the ADA as the bases for her claims, (*Id.* at 4), and demands $600,000 from each of the Defendants "[p]lus punitive and exemplative damages." (*Id.* at 6.)

### D.   Pleading Requirements Under Federal Rule of Civil Procedure 8(a)

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal–Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Since Plaintiff is appearing pro se, the Court must construe the allegations of her complaint liberally and must afford her the benefit of any doubt. *See Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678; *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir.2009). The "sheer possibility" that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

## II.   DISCUSSION

### A.  Shotgun Pleading

A "[s]hotgun pleading occurs when one party pleads that multiple parties did an act, without identifying which party did what specifically; or when one party pleads multiple claims, and does not identify which specific facts are allocated to which claim." *Hughey v. Drummond*, No. 2:14-cv-00037-TLN-AC, 2014 WL 579365, at *5 (E.D. Cal. Nov. 6, 2014) (citation omitted). This violates Rule 10 of the Federal Rules of Civil Procedure, which requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and Rule 8, which requires that the complaint contain a "short and plain statement" of entitlement to relief.

Here, as set forth below, Plaintiff may be able to allege cognizable claims against certain defendants, but the major deficiency with the complaint as currently pleaded is that it is an impermissible "shotgun" pleading. Plaintiff's complaint alleges various claims but does not state

which facts relate to which claim or how the facts relate to the legal claims raised.  This is not permissible because it does not give Defendants "fair notice" of the claims against which they must defend and the facts and legal theories that give rise to the claims.  In any amended complaint, **Plaintiff must clearly state which claim is against which Defendant, the legal basis for the claim, and the facts that support and show that the specific defendant committed the violation asserted as the legal basis for the claim.**  *See* **Fed. R. Civ. P. 8(a)**.

### B.  Cause of Action Under the Fair Housing Act

The FHA makes it illegal "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of [¶] . . . that person[.]" 42 U.S.C. § 3604(f)(2).  A plaintiff can establish a disability discrimination claim under a theory of disparate treatment, disparate impact, or failure to make reasonable accommodations.[8]  *See Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008); *Gamble v. City of Escondido*, 104 F.3d 300, 304–05 (9th Cir. 1997).  Although Plaintiff does not specify on which theory or theories she is basing her FHA claim, the Court screens her claim under the failure to reasonably accommodate and disparate treatment theories.

### 1.  Eleventh Amendment Immunity

As an initial matter, the Court notes that Plaintiff names DFEH, a state agency, as a defendant. (Compl. at 6.)  The Eleventh Amendment, however, "erects a general bar against federal lawsuits brought against a state." *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003) (citation omitted); *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir. 1986) (holding that federal court actions against state agencies are barred under the Eleventh Amendment).  Although Congress may expressly abrogate state sovereign immunity with respect to a particular federal cause of action, *see Quern v. Jordan,* 440 U.S. 332, 345 (1979), the FHA contains no clear congressional statement unequivocally expressing such an intent to abrogate.  *See*

---

[8] Disparate treatment occurs when a disabled person is treated less favorably than a non-disabled because of the person's disability.  *See Budnick*, 518 F.3d at 1113-14; *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).  Disparate impact exists where facially neutral acts or practices have a disproportionate discriminatory impact on disabled persons.  *See Budnick*, 518 F.3d at 1118; *Int'l Bhd. of Teamsters*, 431 U.S. at 335 n.15.

*Kalai v. Hawaii*, No. CIV. 06-00433 JMSLEK, 2008 WL 3874616, at *3 (D. Haw. Aug. 20, 2008) (concluding that "the FHA does not abrogate the states' sovereign immunity"); *cf. United States v. Georgia*, 546 U.S. 151, 159 (2006) (holding that Title II of the ADA validly abrogates Eleventh Amendment immunity for states where conduct that violates the Fourteenth Amendment is involved). Therefore, Plaintiff's FHA claim against DFEH is barred by the Eleventh Amendment.

### 2. Failure to Reasonably Accommodate

To plead a failure to accommodate claim, a plaintiff must allege facts demonstrating that: (1) she suffers from a handicap as defined in 42 U.S.C. § 3602(h); (2) the defendants knew or reasonably should have known of her handicap; (3) accommodation of the handicap "may be necessary" to afford the plaintiff an equal opportunity to use and enjoy the dwelling; and (4) the defendants refused to make such accommodation. *United States v. Cal. Mobile Home Park Mgmt.*, 107 F.3d 1374, 1380 (9th Cir. 1997). The FHA defines a handicap as: "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h).

Plaintiff's FHA claim is deficiently pleaded for several reasons. First, Plaintiff does not provide any details regarding her alleged disability, so the Court cannot assess whether she has a handicap within the meaning of § 3602(h). She makes only the conclusory assertion that she has a "[p]hysical disabilit[y]," (Compl. at 6), and is "disabled," (*id.* at 9). Second, assuming Plaintiff has a handicap as defined by the FHA, Plaintiff has failed to allege any facts demonstrating that Defendants HAKC and the Board knew or reasonably should have known of her handicap, and that she accordingly requested an accommodation. There are no facts in the complaint indicating that Plaintiff communicated, or provided documentation showing, that she had a handicap to HAKC or the Board.

Lastly, Plaintiff alleges that HAKC, and by extension, the Board, improperly refused an extension of her voucher, denied approval of her sister's home, and "failed to open a special case of the Homeowner's program" after Plaintiff was gifted half of her sister's property. (Compl. at 9–11.) Plaintiff, however, has not alleged any facts from which the inference can be drawn that HAKC

engaged in the allegedly improper conduct "because of" her handicap. 42 U.S.C. § 3604(f)(2). Plaintiff's complaint does not explain why HAKC ultimately denied her requests. Furthermore, although the FHA provides for vicarious liability, *Meyer v. Holley*, 537 U.S. 280, 285 (2003), Plaintiff has pleaded no facts demonstrating a principal-agency relationship between HAKC and the Board so as to impute liability to the Board for HAKC's actions.

Plaintiff also claims that HAKC violated various federal regulations. (*See* Compl. at 9–10.) Specifically, she alleges that HAKC violated 24 C.F.R. § 982.355(c)(14) and 24 C.F.R. § 982.306(d). (Compl. at 9–10.) It is not clear what cause of action Plaintiff is attempting to assert by citing to these regulations, as the regulations, on their own, do not provide a private right of action. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 939 (9th Cir. 2003) ("[F]ederal rights are created by Congress through statutes, not by agencies through regulations.").[9]

For the foregoing reasons, the Court concludes that Plaintiff has failed to adequately plead an FHA claim based on a failure to accommodate theory.

### 3. Disparate Treatment

To plead a disparate treatment claim, a plaintiff must allege facts showing that: "(1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury." *Harris v. Itzhaki,* 183 F.3d 1043, 1051 (9th Cir. 1999). In addition, "[d]isparate treatment [under the FHA] requires some showing of discriminatory intent on the part of the defendants[.]" *McDonald v. Coldwell Banker*, 543 F.3d 498, 505 n.7 (9th Cir. 2008). Accordingly, a plaintiff must also plead facts demonstrating the existence of a similarly situated person who was treated better than the plaintiff was, or that "a discriminatory reason more likely than not motivated the defendant and that the defendant's actions adversely affected the plaintiff in some way." *Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013) (citation and internal quotation marks omitted).

Here, Plaintiff fails to allege any facts demonstrating that Defendant HAKC was more likely than not motivated by a discriminatory reason based on her disability in denying her request for a

---

[9] Plaintiff also cites to 24 C.F.R. § 5.630, contending that "PHA HAS DISABILITY VERIFICATION THROUGH THE SSA AWARD LETTER," but that provision concerns the minimum rent that a PHA must charge and does not appear to be relevant to Plaintiff's factual allegations.

voucher extension, declining to approve her sister's home, and failing to "open a special case of the Homeowner's program" after Plaintiff was gifted half of her sister's property, (Compl. at 9–10). Plaintiff's complaint does not provide HAKC's proffered reasons for denying her various requests. Moreover, as previously discussed, Plaintiff fails to allege any facts indicating that Defendant HAKC was even aware that she has a disability, knowledge of which is a prerequisite to HAKC's formation of a discriminatory intent.  Therefore, the Court finds that Plaintiff has failed to adequately plead the elements of a disparate treatment claim.

### C. Cause of Action Under the Americans with Disabilities Act

The ADA consists of Titles I–V, encompassing employment, public entities, public accommodations, telecommunications, and miscellaneous provisions.  42 U.S.C §§ 12111–12213. A plaintiff must make specific showings to bring an ADA claim based on the Title under which they seek enforcement.  Here, Plaintiff alleges that Defendants "violated . . . the American with Disabilities Act" in the federal-question-jurisdiction section of the complaint form but does not mention the ADA elsewhere in her complaint.  (Compl. at 4.)  As Title II of the ADA applies to public entities, and the named defendants are all governmental entities, the Court construes Plaintiff's ADA claim to be brought under Title II of the ADA.

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of her disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).  To recover monetary damages under Title II of the ADA, a plaintiff must also prove intentional discrimination on the part of any defendants. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).  The standard for intentional discrimination is deliberate indifference, which requires the plaintiff to show that the defendant knew "harm to a federally protected right [wa]s substantially likely" and failed to act upon that likelihood.  *Id.* at 1139.

As previously discussed, Plaintiff has not provided any details regarding her alleged disability, nor has she pleaded any facts indicating she disclosed her disability to Defendants and any adverse action taken against her was taken due to her disability.  Accordingly, Plaintiff has

failed to state a claim upon which relief may be granted.

### D.   CONCLUSION AND ORDER

As noted above, the Court will provide Plaintiff with an opportunity to amend her claims and cure, to the extent possible, the identified deficiencies. *Lopez*, 203 F.3d at 1130.  Plaintiff may not change the nature of this suit by adding new, unrelated claims in her amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must identify what causes of action are being pursued, identify the improper actions or basis for liability of each defendant, and the factual allegations must demonstrate plausible claims, *Iqbal*, 556 U.S. at 678–79.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citations omitted).  Finally, Plaintiff is advised that an amended complaint supersedes the prior complaints. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012) (*en banc*).  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Rule 220, Local Rules of the United States District Court, Eastern District of California.

Based on the foregoing, it is HEREBY ORDERED that:

1.    Plaintiff is granted leave to file a first amended complaint; and

2.    Within twenty-one (21) days from the date of service of this order, Plaintiff must file a first amended complaint curing the deficiencies identified by the Court in this order, or a notice of voluntary dismissal.

**If Plaintiff fails to file an amended complaint in compliance with this order, the undersigned will recommend to the assigned district judge that this action be dismissed for failure to state a claim and to obey a court order**.

IT IS SO ORDERED.

Dated:   **January 19, 2021**                              /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE